**In the Matter of K.D., R.D.**

**Appeal of A.D.**

Superior Court of Pennsylvania.

Submitted Aug. 30, 1999.

Filed Nov. 24, 1999.

Reargument Denied Feb. 7, 2000.

Edward Michael Flannery, Philadelphia, for appellant.

Karl Baker, Asst. Public Defender, Philadelphia, for appellees.

Dana Heck, Asst. City Sol., Philadelphia, for Dept. of Human Services, participating party.

Before JOHNSON, LALLY–GREEN and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1  Before this Court is an appeal from the order of the court of common pleas requiring that A.D. (appellant) undergo a mental health evaluation in connection with a dependency proceeding.  The trial court held that the psychological evaluation would not violate appellant's constitutional rights nor would it impinge upon her privacy interests.  After a careful review of the record, the Pennsylvania Constitution, the Juvenile Act, and relevant case-law, we reverse the decision of the trial court.

¶ 2  This case comes to this Court as a dependency proceeding under the Juvenile Act, 42 Pa.C.S.A. § 6301 (1999).  On September 4, 1998, the Honorable Richard Gordon issued a restraining order for K.D. and R.D., children of appellant.  The Department of Human Services (DHS) took temporary custody of the children.  DHS filed dependency petitions for both children.  A hearing was held on the petitions, and on September 17, 1998, the Honorable James Murray Lynn adjudicated the children dependent.  Judge Lynn also ordered appellant to undergo a psychological evaluation.  Appellant objected and filed the instant appeal.

¶ 3  Appellant presents one question for our review:

> Did the trial court err in ruling that under the Juvenile Act, the Court had the authority to compel a parent to submit to a psychological evaluation and release the testing, evaluation and psychological report to interested parties?

¶ 4  The Juvenile Act does not expressly provide for a parent to submit to a psychological evaluation during a dependency proceeding.  Moreover, the purposes of the Act are:

(1) To preserve the unity of the family wherever possible or to provide another alternative permanent family when the unity of the family cannot be maintained.

(1.1) To provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter.

. . .

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety.

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

42 Pa.C.S.A. § 6301(b).

¶ 5 The Supreme Court of Pennsylvania has stated that, "[t]he government's intrusion into person's private affairs is constitutionally justified when the government interest is significant and there is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose." *Denoncourt v. Commonwealth of Pennsylvania, State Ethics Comm'n*, 504 Pa. 191, 470 A.2d 945, 949 (1983).

¶ 6 We believe, *under the circumstances of this case,* that the best interests of the children can be maintained without compelling appellant to submit to a psychological evaluation. Our thorough evaluation of the trial court opinion and the record reveals a noticeable lack of support for subjecting appellant to this evaluation. A mere allegation that appellant has been taking medication for a mental condition and passed out on one occasion as a result of the medication is insufficient, in our minds, to force upon her an unwanted psychological evaluation.

¶ 7 Our decision today is consistent with the Juvenile Act and with Article I Section I of the Pennsylvania Constitution, which provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

¶ 8 *In the Matter of T.R.*, 557 Pa. 99, 731 A.2d 1276 (1999), directly addressed the issue in this case. Writing in plurality and announcing the judgment for the Court, the Honorable Chief Justice Flaherty opined that there was no government interest sufficient to outweigh a mother's right of privacy and interest to be free from an unwanted psychological evaluation. *Id.* at 1281–82. While recognizing that a plurality opinion by the Supreme Court is not binding precedent on this Court,[1] we nevertheless find Chief Justice Flaherty's opinion to be persuasive on this issue.

¶ 9 Chief Justice Flaherty, joined by Justice Cappy with Justice Zappala concurring in the result,[2] wrote:

The real issue in the case, then, is not so much whether the children should be removed, as whether the mother should be protected from her own assertion of a constitutional right because the assertion of that right may impede the efforts of the courts to return the children to her care . . . .

Compelling a psychological examination in this context is nothing more or less than social engineering in derogation of constitutional rights, and where, as here, there is an abundance of information about the ability of the parent to be a

---

1. *See In the Interest of O.A.*, 552 Pa. 666, 717 A.2d 490, 496 (1998).

2. Mr. Justice Nigro filed a concurring opinion. Madame Justice Newman filed a dissenting opinion joined by Mr. Justice Castille.

parent, there is no state interest, much less a compelling state interest, in the ordering of parental psychological examinations. In fact, we find such state intervention frightening in its Orwellian aspect. It is one thing for the mother to agree to psychological evaluation and to voluntarily undergo instruction in self-improvement, but it is quite another for the state, in the exercise of paternalistic might, to order a psychological evaluation in violation of the mother's constitutional rights, presumably upon pain of imprisonment for contempt of court. The constitution is not a mere policy statement to be overridden by a sociological scheme for the improvement of society. The mother, alas, may be her own worst enemy and her shortcomings as a parent may result in the permanent removal of her children; nonetheless, the mother remains a free person, and her power to assert her constitutional right to privacy is not diminished merely because the representatives of the state think it is ill advised.

*Id.* at 1281.

¶ 10 The Pennsylvania Supreme Court made a similar disposition in *In Re B*, 482 Pa. 471, 394 A.2d 419 (1978), where the issue was whether the trial court could order the release of the mother's psychiatric records to determine the proper placement of a child in a juvenile delinquency proceeding. The Court held that the mother's right of privacy precluded the release of psychiatric records and specifically stated, "our holding may, in some cases, make it more difficult for the court to obtain all the information it might desire regarding members of the juvenile's family, or about the juvenile's friends, neighbors, and associates. The individual's right of privacy, however, must prevail in this situation." *Id.* at 426.

¶ 11 For all of the reasons set forth above, we REVERSE the order entered on September 17, 1998. Jurisdiction relinquished.

¶ 12 LALLY–GREEN, J., Concurs in the Result.